**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **BYRON JOHNSON** | * | |
| 1203 Linden Avenue | | |
| Sharon Hill, PA 19079 | * | |
|     Plaintiff | | |
| | * | |
| v. | | |
| | * | |
| **CHESTER RIVER HOSPITAL  CENTER** | | |
| 100 Brown Street | * | |
| Chestertown, MD 21620 | | |
|     Defendant | * | |
| | | |
|     Resident Agent: | * | |
|     WILLIAM R. KIRK, JR. | | |
|     100 Brown Street | * | |
|     Chestertown, MD 21620 | | |
| | * | |
| **MARGARET MCDONOUGH M.D.** | | |
| 100 Brown Street | * | |
| Chestertown, MD 21620 | | |
|     Defendant | * | |
| | | |
| **SCOTT A. GLASSER, M.D**. | * | CASE No.: |
| 110 Hospital Road | | |
| Prince Frederick, MD 20678 | * | |
|     Defendant | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>COMPLAINT</u>

NOW COMES, Plaintiff Byron Johnson by and through his attorneys Iamele &

Iamele, L.L.P, and brings this cause of action against the Health Care Providers, Chester

River Hospital Center, Margaret McDonough, M.D., and Scott A. Glasser, M.D. stating

as follows:

<u>JURISDICTION AND VENUE</u>

1. This Complaint is filed pursuant to the UNITED STATES CODE ANNOTATED, Title 28 § 1332, as the damages claimed in this case are in excess of $75,000 and the controversy is between citizens of different States.

2. Plaintiff Johnson is domiciled in the State of Pennsylvania and currently resides at 1203 Linden Avenue Sharon Hill, Pennsylvania 19079.

3. Health Care Provider Chester River Hospital Center (hereinafter referred to as "Chester River") is a hospital licensed to do business in the State of Maryland, and operates its principal place of business at 100 Brown Street Chestertown, MD 21620. This Health Care Provider operates through its agents, servants and employees including Dr. Margaret McDonough, Dr. Scott A. Glasser, Christine Wallace and Robin Nicholson.

4. Health Care Provider Margaret McDonough (hereinafter referred to as "McDonough") is an emergency room physician who currently and at all times complained of herein was and is licensed to practice medicine in the State of Maryland, with her principal place of business located at 100 Brown Street, Chestertown, MD 21620.

5. Health Care Provider Scott Glasser (hereinafter referred to as "Glasser") is a radiologist who currently and at all times complained of herein was and is licensed to practice medicine in the State of Maryland, with his principal place of business located at 110 Hospital Road, Prince Frederick, Maryland 20678.

6. On July 25, 2007 Plaintiff elected to waive arbitration with the Health Claims Arbitration Office.

RELEVANT HISTORY AND FACTS COMMON TO ALL COUNTS

7. The complaint arises from the events of August 12, 2004. That morning, Plaintiff Johnson was riding a bicycle on Route 213 in Chestertown, Maryland. He was forced off of the road by a passing truck, caused to flip over the front of his bike, and

ultimately landed on his shoulder, neck and back.  Plaintiff Johnson experienced pain and numbness from the top of his neck down to the middle portion of his low back after the fall, but was able to remount his bicycle and pedal the short distance back to his home. When Plaintiff Johnson arrived home he fell for a second time while trying to dismount his bicycle. After approximately 15-20 minutes, the Plaintiff managed to pull himself off of the ground. He then traveled up his driveway with the use of his bicycle for support. The Plaintiff then fell for a third time while placing his bicycle in a carport and struck his head against a parked automobile.

8. Plaintiff Byron Johnson was taken to Chester River Hospital by a family member. Because Plaintiff could not walk at the time of his arrival, approximately 11:45 a.m., a hospital volunteer used a wheelchair to assist him in entering the facility.

9. Once inside the emergency room, an intake nurse registered the Plaintiff and then sent him to be evaluated.  He was triaged by Christine Wallace, a registered nurse employed by Chester River Hospital. Wallace questioned the Plaintiff, and then recorded his history as follows:  "Pt reports to ED [with compliant of shoulder and base of neck pain], pt states he 'fell off his bike onto the ground.' Pt. also states "I hit my head on a car' pt say [left] side of head…."  Wallace never observed the Plaintiff walking or out his wheel chair.  She also did not conduct/document any neurological evaluation.  She did, however, include a notation a notation in her intake records relative to an unspecified decrease in range of motion.

10. Because Chester River Hospital did not have a Philadelphia collar that fit the Plaintiff, his neck injury was not properly stabilized after his admission. Plaintiff Johnson continued to suffer severe pain and requested pain medication.

11. Plaintiff Johnson was eventually transported to the radiology department. Because the Plaintiff could not stand, a nurse assisted him out of his wheelchair so that he could be x-rayed.   Radiographic studies were obtained to rule out the possibility of fracture in Plaintiff's shoulder and cervical spine.

12. Health Care Provider Glasser then obtained five films of the Plaintiff's cervical spine.  Two of these films could not be read as they were unclear. Health Care Provider Glasser interpreted the x-ray films as being suggestive of ankylosing spondylitis and degenerative disc disease at the C3-4 level.  By way of a written Diagnostic Imaging Report, Dr. Glasser noted his belief that the disk space narrowing and mild subluxation, found at the C3-4 level, were chronic in nature.  He did not recommend that the Plaintiff undergo any additional studies, i.e. MRI or CT scan, to further investigate or rule out the possibility of injury.

13. At approximately 12:45 p.m. the Plaintiff was evaluated by Health Care Provider McDonough.  Dr. McDonough documented the following: "Pt. presents to ED complaining of left shoulder & neck pain after falling off of his bike."  Her notes suggest that the Plaintiff advised her that he was not experiencing any problems with ambulation or any numbness or tingling. However, Plaintiff Johnson did not stand and remained in a wheel chair for the entire time that he was at Chester River. This limitation is not included in the hospital chart. To the contrary, Dr. McDonough's notes indicate that the Plaintiff was without neurological deficit during the course of his hospital stay on August 12, 2004.  There is no mention of specific neurological examination.

14. Dr. McDonough has since indicated that she was nevertheless very concerned about the Plaintiff Johnson's health status. After receiving the "wet read" of the

Plaintiff's cervical x-rays she decided that she wanted to review them for herself. She traveled to the radiology department and looked over the x-rays with Dr. Glasser. She instructed Dr. Glasser that the Plaintiff had fallen off of his bike. She then asked that he particularly review the area of the film showing the subluxation to verify that he was comfortable with his interpretations. After reviewing the films, she concurred with Dr. Glasser's conclusion that there were no fractures or acute injuries present.

15. Notwithstanding the facts that the Plaintiff (1) presented with a history of three distinct falls, including the fall from his bicycle, followed by neck and shoulder pain, and (2) a radiographic study had been obtained showing ankylosing spondylitis and a subluxation at the C3-4 level, neither Dr. McDonough nor Dr. Glasser determined a need to rule out the significant risk for cervical spine injuries. Neither of the Health Care providers elected to conduct a further evaluation by CT spine imaging and/or MRI cervical spine imaging. Moreover, neither Dr. McDonough nor Dr. Glasser made a decision to admit the Plaintiff or transfer him to another facility for care.

16. Dr. McDonough ultimately concluded that Plaintiff Johnson had suffered a cervical strain secondary to his fall from a bicycle. She then discharged him with instruction to apply a cold compress for twenty-four hours and a warn compress thereafter. Plaintiff Johnson was also given a sling and prescription for Percocet at the time of his discharge and instructed to follow up with Dr. Johnson.

17. Before being discharged, Plaintiff advised Dr. McDonough and other health care providers at Chester River that he was in distress and continuing to experience great pain. He further advised the staff that he was significantly injured and unable to

ambulate on his own.  Despite Plaintiff's protest, he was discharged from the Chester River by Nurse Robin Nicholson.

18. After being discharged, an emergency room volunteer wheeled Plaintiff Johnson out of the hospital.  His Aunt then assisted him into her car and drove him home. When Plaintiff Johnson arrived home, his family members assisted him into his house and placed him in an easy chair where he would remain for the next two days.

19. Once home, the Plaintiff called his son Byron Ian Johnson, and advised him that he had been injured and needed a ride to a hospital in Baltimore City.  On Saturday, August 14, 2007, the Plaintiff's son traveled from Philadelphia to the Plaintiff's home at 7498 Poplar Avenue, Chestertown, Maryland.  He then took his father to the Emergency Room at Mercy Hospital.

20. Plaintiff Johnson presented to Mercy with significant pain in his left neck.  He reported that he had progressive gradual worsening of strength and indicated that he was without the ability to stand up.  On physical examination, it was noted that the Plaintiff was not able to stand up, that he had no grip strength in his left hand and that he had diminished grip strength in his right hand. The medical personnel at Mercy decided that it would be necessary to transfer the Plaintiff to Maryland Shock Trauma.

21. On August 15, 2004, the Plaintiff was transferred to the University of Maryland Medical Center.  Plaintiff Johnson reported that he had fallen from his bike and struck his head, and that since that time he had been experiencing numbness and dizziness.  A neurological examination was conducted by Sock Trauma personnel and showed diminished function.  An MRI was then obtained and showed a fractured subluxation at the C3-4 level, a herniated disc and severe sclerosis of the C3-C4 and

spinal cord compression.   On August 16, 2004 Plaintiff underwent surgical fusion at the level of C3-4. Subsequent radiographic studies revealed continuing cord compression and a second procedure was preformed wherein the Plaintiff underwent a posterior fusion and discectomy.  Plaintiff Johnson remained at University of Maryland until August 30, 2007.

22. Plaintiff was then transferred to Kernan Hospital where he remained until November 19, 2004.  At the time of his discharge the Plaintiff was continuing to suffer significant injuries and neurological deficits which would have been prevented had he received proper medical care at the Chester River Hospital.

COUNT I – NEGLEIGENCE
(Chester River Hospital Center)

23. Plaintiff incorporates paragraphs 1-22.

24. That at all times relevant to this Complaint, Health Care Provider Chester River Hospital operated an Emergency Department through its agents, servant and/or employees.

25. The Plaintiff alleges that the Health Care Provider Chester River, as well as, its duly authorized agents, servants and/or employees, owed Plaintiff Johnson the duty to exercise the degree of care, skill, expertise, and judgment expected of a competent medical corporation acting in the same or similar circumstances, which duty included the performance of adequate and proper tests and procedures to determine the nature and severity of the Plaintiffs condition.  Moreover, Health Care Provider owed Plaintiff Johnson the duty to maintain at the facility standard medical equipment necessary to treat patients in need of emergent care.

26. Health Care Provider Chester River negligently and carelessly failed to employ appropriate treatment, surgery, tests and/or procedures, failed to carefully and

thoroughly examine and evaluate the Plaintiff's condition, failed to properly document Plaintiff's history/presentation, failed to properly and appropriately examine and diagnosis the Plaintiff's condition, failed to obtain proper diagnostic studies, failed to act in an appropriate fashion given the indicia of/or known risk or injury demonstrated corresponding with Plaintiff's x-rays, failed to thoroughly evaluate the effects and results of Plaintiffs tests and/or procedures performed, failed to properly rule out the potential that Plaintiff was suffering a spinal cord injury, and was otherwise negligent.

27. As a direct and proximate result of the standard of care breaches of Defendant Hospital, Plaintiff has suffered injuries and damages including but not limited to delay in the diagnosis and treatment of his spinal injury, a prolonged hospital course, permanent neurological deficits, pain and suffering, financial loss, and other damages. Plaintiff has suffered severe, permanent, disabling injuries to his spine and is now an incomplete paraplegic. Plaintiff continues, among other things, to suffer persistent chronic pain, discomfort, sleep disturbance, constipation, impaired mobility, mood alteration, decreased strength and mobility in his lower extremities bilaterally. Plaintiff is at risk for falls, bowel obstruction, skeletal deformities, orthopedic issues, pulmonary infections, deep vein thrombosis, and renal complications. Plaintiff will continue to need primary care and ongoing monitoring by specialty physicians.

WHEREFORE, Plaintiff Byron Johnson, demands judgment from and against Health Care Provider Chester River Hospital.

COUNT II – NEGLIGENCE
( Margaret McDonough, M.D.)

28. Plaintiff incorporates paragraphs 1-27.

29. Health Care Provider McDonough held herself out to the general public, and in particular, as a specialist in the field of emergency medicine.

30. The Plaintiff alleges that the Health Care Provider McDonough owed Plaintiff the duty to exercise the degree of care, skill, expertise, and judgment expected of a competent medical practitioner acting in the same or similar circumstances as those involving the Plaintiff.

31. Health Care Provider McDonough negligently and carelessly failed to employ appropriate treatment, surgery, tests and/or procedures, failed to obtain a proper history from the Plaintiff, failed to carefully and thoroughly evaluate the Plaintiff's condition, failed to conduct required physical and neurological examinations, failed to properly and appropriately diagnose the Plaintiff's condition, failed to thoroughly evaluate the effects and results of Plaintiffs tests and/or procedures performed, failed to take action in response to radiographic studies that demonstrated a significant risk of spinal injury, failed to order/obtain necessary and proper studies, failing to devote appropriate time, attention and care to the Plaintiff, and was otherwise negligent.

32. As a direct and proximate result of the standard of care breaches of Defendant McDonough, Plaintiff has suffered injuries and damages including but not limited to delay in the diagnosis and treatment of his spinal injury, neurological deficits, surgery, pain and suffering, financial loss, and other damages. Plaintiff has suffered severe, permanent, disabling injuries to his spine and is now an incomplete paraplegic. Plaintiff continues, among other things, to suffer persistent chronic pain, discomfort, sleep disturbance, constipation, impaired mobility, mood alteration, decreased strength and mobility in his lower extremities bilaterally. Plaintiff is at risk for falls, bowel

obstruction, skeletal deformities, orthopedic issues, pulmonary infections, deep vein thrombosis, and renal complications. Plaintiff will continue to need primary care and ongoing monitoring by specialty physicians. All of which are due to the negligence of Health Care Provider McDonough.

WHEREFORE, Plaintiff Byron Johnson, demands judgment from and against Health Care Provider McDonough.

COUNT III – NEGLIGENCE
(Scott A. Glasser, M.D.)

33. Plaintiff incorporates paragraphs 1-32.

34. Health Care Provider Glasser held himself out to the general public, and in particular, as a specialist in the field of radiology.

35. Plaintiff Johnson alleges that the Health Care Provider Glasser owed Plaintiff the duty to exercise the degree of care, skill, expertise, and judgment expected of a competent medical practitioner acting in the same or similar circumstances as those involving the Plaintiff.

36. Health Care Provider Glasser negligently and carelessly failed to demand proper treatment, surgery, tests and/or procedures, failed to properly and appropriately diagnose the Plaintiff's condition, failed to thoroughly evaluate the effects and results of Plaintiffs tests and/or procedures performed, failed to obtain complete radiographic studies on the Plaintiff's injury sites, failed to properly interpret the studies that were obtained of the Plaintiff, failed to appreciate/react to the significant potential of spinal cord injury that was evident based on the Plaintiff's history, as provided by Dr. McDonough, in conjunction with the x-ray he reviewed, and was otherwise negligent.

37. As a direct and proximate result of the standard of care breaches of Health Care Provider Glasser, Plaintiff has suffered injuries and damages including but not limited to delay in the diagnosis and treatment of his spinal injury, neurological deficits, pain and suffering, financial loss, and other damages. Plaintiff has suffered severe, permanent, disabling injuries to his spine and is now an incomplete paraplegic. Plaintiff continues, among other things, to suffer persistent chronic pain, discomfort, sleep disturbance, constipation, impaired mobility, mood alteration, decreased strength and mobility in his lower extremities bilaterally. Plaintiff is at risk for falls, bowel obstruction, skeletal deformities, orthopedic issues, pulmonary infections, deep vein thrombosis, and renal complications. Plaintiff will continue to need primary care and ongoing monitoring by specialty physicians. All of which are due to the negligent delay in diagnosing his true injury on August 12, 2004.

WHEREFORE, Plaintiff Byron Johnson, demands judgment from and against Defendant Glasser.

Respectfully submitted,

IAMELE & IAMELE, LLP


_____
Domenic R. Iamele
Anton L. Iamele
201 N. Charles Street
Suite 700
Baltimore, MD 21201
(410) 779-6160
Attorneys for the Plaintiff