```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MARYLAND

BYRON JOHNSON                       :
                                    :
v.                                  :  Civil Action No. WMN-07-2069
                                    :
CHESTER RIVER HOSPITAL CENTER       :
    et al.                          :
```

## MEMORANDUM

Before the Court are motions to dismiss filed by Defendant Scott A. Glasser, M.D., Paper No. 5, and Defendants Chester River Hospital Center and Margaret McDonough, M.D., Paper No. 6. The motions are fully briefed and on December 6, 2007, the Court held an evidentiary hearing on these pending motions. Upon a review of the motions, the evidence presented at the hearing, and the applicable case law, the Court determines that Defendants' motions will be denied.

This is a medical malpractice action arising out of treatment provided to Plaintiff in the emergency and radiology departments of the Chester River Hospital Center (the Hospital) on or about August 13, 2004. Plaintiff was taken to the Hospital complaining of back and neck injuries after experiencing a bicycle accident. He was discharged without significant treatment. Two days later, however, he was seen at Mercy Medical Center in Baltimore, then transferred to the University of Maryland Shock Trauma Center, also in Baltimore, where he underwent two surgeries. He was subsequently transferred to Kernan Hospital, also in Baltimore, where he remained receiving

treatment for several months. He alleges that the deficient care he received at the Chester River Hospital Center caused him to suffer significant additional injuries and neurological deficits. He filed this action on August 2, 2007, asserting claims of negligence against the Hospital; Dr. Margaret McDonough, the emergency department physician who treated him; and Dr. Scott Glasser, the radiologist who interpreted x-ray films of Plaintiff's spine.

The basis asserted in the Complaint for this Court's jurisdiction over Plaintiff's claims is diversity of citizenship pursuant to 28 U.S.C. § 1332. It is undisputed that each and every Defendant is a citizen of the State of Maryland. While Plaintiff alleges in the Complaint that he is domiciled in the State of Pennsylvania and thus a citizen of Pennsylvania for jurisdictional purposes, Defendants assert in the their motions to dismiss that Plaintiff is actually a citizen of Maryland. If Defendants' assertions are correct, complete diversity would not be present and this action must be dismissed.

For the purpose of diversity of citizenship jurisdiction, a person is considered a citizen of the state in which he or she is domiciled. Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 49 (1st Cir. 1992). A person's domicile "is the place where he has a true fixed home and principle establishment, and to which, whenever he is absent, he has the intention of returning." 13B

C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3612 at 526.  When the domicile of a party is in doubt, courts look to a number of factors, which have been summarized as follows:

> current residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; memberships in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes; as well as several others.  No single factor is conclusive.

Id. at 530-31.  Domicile is determined at the time that suit is filed.  Bank One, 964 F.2d at 49.

Once jurisdiction based upon diversity of citizenship has been challenged, the party asserting diversity has the burden of persuasion.  Dyer v. Robinson, 853 F. Supp. 169, 173 (D. Md. 1994).  Furthermore, if a party is asserting that he has changed his domicile, that party must establish that he (1) resides in the new state, and (2) has the "intent to remain at the new residence indefinitely."  Id. at 172.  Because of the presumption that a person will "retain the domicile with which he was born unless it can be shown that he has established a new domicile," persons asserting a change of domicile have the burden of showing that change by "clear and convincing" evidence.  Dyer, 853 F. Supp. at 173; see also Palazzo v. Corio, 232 F.3d 38, 42 (2nd Cir. 2000) ("A party alleging that there has been a change of

domicile has the burden of proving the require[d] ... intent to give up the old and take up the new [domicile], coupled with an actual acquisition of a residence in the new locality, and must prove those facts by clear and convincing evidence.") (internal quotations and citations omitted).  While the questions of intention to change domicile and then to remain are factual questions, they need not be submitted to a jury but can be resolved by the district court.  Reynolds v. Wohl, 332 F. Supp. 2d 653, 657 (S.D.N.Y. 2004).

It is undisputed that Plaintiff was living in Chestertown, Maryland, with his sister when he had the bicycle accident and for several years thereafter.  Plaintiff submitted an affidavit and testified at the hearing, however, that he moved to Pennsylvania in February of 2007.  He explains that the purpose of the move was to be closer to his son, his grandchildren, and the woman with whom he had a long-standing relationship.  He testified that his son was in a better position to care for the needs attendant to Plaintiff's disability than the sister in Chestertown.  He also testified that he has moved all of his personal belongings to Pennsylvania and intends to remain a citizen of Pennsylvania with no current intention to move back to Maryland.

In their motions and at the hearing, Defendants note several inconsistencies in the record regarding the bona fides of Plaintiff's claim that he was domiciled in Pennsylvania when this

4

suit was filed. Most notable, when Plaintiff was stopped for a traffic violation in April of 2007, he presented a Maryland drivers license. In addition, while Plaintiff presented at the evidentiary hearing a Pennsylvania drivers license, a Pennsylvania vehicle registration, a Pennsylvania voters registration card, and a lease for an apartment in Pennsylvania, Defendants note that all of these documents were issued or executed after Defendants filed their motions to dismiss.

The determination of Plaintiff's domicile ultimately turns on the Court's view of Plaintiff's credibility. Having heard his testimony and observed his demeanor, the Court finds thoroughly credible Plaintiff's representation that he moved to Pennsylvania in February 2007 with the intent to remain there. Plaintiff's delay in completing the formal indicia of such a move, such as changing his driver license or vehicle registration, are reasonably explained by the extra burdens and restrictions imposed by Plaintiff's disabilities. Accordingly, the Court concludes that there was complete diversity of citizenship at the time Plaintiff filed this suit.

Defendants argue that, should the Court conclude that there is subject matter jurisdiction over this action, the Court should dismiss it, nevertheless, under the doctrine of <u>forum non conveniens</u>. Under this doctrine, "when an alternative forum has jurisdiction to hear a case, and when trial in the chosen forum would establish oppressiveness and vexation to a defendant out of

all proportion to plaintiff's convenience, or when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems, the court may, in the exercise of its sound discretion, dismiss the case, even if jurisdiction and proper venue are established." American Dredging Co. v. Miller, 510 U.S. 443, 447-448 (1994) (internal quotations and ellipses omitted).  The Supreme Court recently held that this common-law doctrine has continuing application in federal courts in cases where the alternative forum is abroad, but also allowed that it could be applicable "perhaps in rare instances where a state or territorial court serves litigational convenience best."  Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp., 127 S.Ct. 1184, 1190 (2007) (citing 14D C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3828, pp. 620-623, and nn. 9-10 (3d ed. 2007)).

Assuming that in rare instances a federal district court with jurisdiction over a diversity action could, nonetheless, decline to exercise that jurisdiction to allow the case to go forward in a state court, this Court finds that this is certainly not one of those rare instances.  As Plaintiff notes, while there are some relevant medical records in Chestertown, the medical records related to Plaintiff's subsequent treatment in three different Baltimore health care facilities are far more voluminous.  Furthermore, there are numerous treating physicians in Baltimore that might be called to testify.  Whatever minor convenience factors might favor a Chestertown forum simply do not

6

meet the heavy burden of outweighing the Plaintiff's choice of forum.

Finally, the Hospital and Defendant Glasser argue that the claims against them should be dismissed based upon Plaintiff's failure to file an adequate certificate of merit as required under Maryland's health care malpractice claims statute, Md. Code Ann., Cts & Jud. Proc. §§ 3-2A-01 et seq.  Under this statute, a medical malpractice claimant must file a claim with the Health Care Alternative Dispute Resolution Office (HCADRO) before an action can be brought in court.  See id. §§ 3-2A-02; 3-2A-04; Carroll v. Konits, 929 A.2d 19, 27-28 (Md. 2007) (observing that the arbitration process is a condition precedent to the filing of a claim in court).  Within 90 days of filing such a claim, the claimant must file with the Director of the HCADRO a certificate of a qualified expert with respect to each health care provider identified as a defendant.  See Md. Code Ann., Cts & Jud. Proc. § 3-2A-04(b); Walzer v. Osborne, 911 A.2d 427 (Md. 2006).  Under amendments that took effect on January 1, 2005, the Maryland legislature added the requirement that:

> (ii) 1. In addition to any other qualifications, a health care provider who attests in a certificate of a qualified expert or testifies in relation to a proceeding before a panel or court concerning a defendant's compliance with or departure from standards of care:
>
> A. Shall have had clinical experience, provided consultation relating to clinical practice, or taught medicine in the defendant's specialty or a related field of health care, or in the field of health care

7

> in which the defendant provided care or treatment to the plaintiff, within 5 years of the date of the alleged act or omission giving rise to the cause of action; and
>
> B. Except as provided in item 2 of this subparagraph, if the defendant is board certified in a specialty, shall be board certified in the same or a related specialty as the defendant.
>
> 2. Item (ii)1 B of this subparagraph does not apply if:
>
> A. The defendant was providing care or treatment to the plaintiff unrelated to the area in which the defendant is board certified; or
>
> B. The health care provider taught medicine in the defendant's specialty or a related field of health care.

Md. Code Ann., Cts. & Jud. Proc. § 3-2A-02(c)(2)

Plaintiff filed a complaint in the HCADRO on July 25, 2007. With that complaint, Plaintiff filed the certificate and report of Dr. Terrance Baker, a physician board certified in emergency medicine and forensic medicine. On that same date, Plaintiff also filed an election of waiver of arbitration, as allowed under the health care malpractice statute, which permitted him to file suit in this Court. See id. § 3-2A-06B(b) (allowing claimant to waive arbitration after filing of certificate of qualified expert). In response to Defendant Glasser's motion to dismiss filed here, on October 19, 2007, Plaintiff filed with the HCADRO a supplemental certificate of merit and report of Dr. Marc Liebeskind, a physician board certified in diagnostic radiology.

This Court finds that Plaintiff's submission of the certificate and report of Dr. Liebeskind satisfies the

certificate issue raised on behalf of Dr. Glasser.  As one board certified in diagnostic radiology, Dr. Liebeskind meets the requirements of the statute to render an opinion as to the standard of radiological care.  The Court also notes that Plaintiff's filing of the supplemental certificate and report was timely under the statute.  See id. § 3-2A-04(b)(1)(i)(1) (certificate and report must be filed within 90 days of the date of the complaint).

As to the Hospital, the Court concludes that Dr. Baker's certificate and report meets the statutory requirement as to this health care provider.  Plaintiff asserts that the hospital was negligent in that, inter alia, the emergency department did not have a proper charting protocol in place and failed to stock necessary medical supplies, specifically, a properly-sized "Philadelphia collar."  As one board certified in the field of emergency medicine, Dr. Baker can certainly offer opinions as to the proper standard of care regarding those issues.  Thus, Plaintiff has satisfied the statutory gatekeeping requirement to bringing a suit against the Hospital.[1]

---

[1] Plaintiff also seeks to hold the hospital accountable for alleged deficiencies in the nursing care provided in the emergency department.  The Hospital asserts that, because he is not a nurse, Dr. Baker cannot offer opinions as to the standard of nursing care.  While the Court does not need to reach the issue, the Court would disagree that Dr. Baker is unqualified to offer opinions regarding the standard of care to be provided by nurses in a hospital's emergency department.  The statute specifies that the expert must have "clinical experience, provided consultation related to clinical practice, or taught medicine in the defendant's specialty or a related field of health care . . . ."  Md. Code Ann., Cts. & Jud. Proc. § 3-2A-

For the above stated reasons, Defendants' motions to dismiss will be denied.  A separate order will issue.

                                             /s/
                                 William M. Nickerson
                                 Senior United States District Judge

Dated: December 13, 2007.

---

02(c)(2)(ii)(1)(A) (emphasis added).  As an emergency room physician who routinely relies upon the information provided by the emergency room nursing staff, Dr. Baker is qualified to opine regarding the alleged deficiencies in that information.